Tina SWITZER, Plaintiff,

v.

Jose RIVERA, et al., Defendants.

No. CV–S–00–0788–RLH (RJJ).

United States District Court,
D. Nevada.

Nov. 30, 2001.

Althea Gilkey, S. McCurry, Law Office of Althea Gilkey, Las Vegas, NV, for Elizabeth Burns, Tina Switzer, plaintiffs.

Mark Ricciardi, Ricciardi Law Group, Las Vegas, NV, for Harrah's Las Vegas, Inc., Harrah's Las Vegas, Inc., Jerry Mayer, defendants.

Mark Ricciardi, Donna Sternicki, Ricciardi Law Group, Las Vegas, NV, for Dean Allen, Tim Bowen, Don Bynum, Brian Kay, Jerry Mayer, Charles McDaniels, Bernard Steel, Juan Valladares, defendants.

## ORDER

HUNT, District Judge.

Before this Court are Defendant Harrah's Las Vegas Inc.'s ("Harrah's") **Motion for Summary Judgment** (# 52), filed July 30, 2001; Defendants' **Motion for Summary Judgment as to Jose Rivera, Jerry Mayer, Charles McDaniel, Bernard Steel, Juan Valladares, and Don Bynum ("Individual Defendants")** (# 53), filed July 30, 2001; Plaintiff's **Countermotion for Summary Judgment** (# 58), filed August 24, 2001; and Defendant Harrah's **Motion to Strike** (# 60), filed October 15, 2001. The Court has also considered Plaintiff's Opposition (# 55), filed August 14, 2001; Plaintiff's Opposition (# 56), filed August 24, 2001; Plain-

tiff's Opposition (# 57), filed August 24, 2001(# 57); Defendant Harrah's Reply (# 61), filed September 24, 2001; Defendant Harrah's Opposition (# 62), filed September 24, 2001; Individual Defendants' Reply (# 63), filed September 24, 2001; Plaintiff's Reply (# 64), filed October 9, 2001; Plaintiff's Opposition (# 65), filed October 11, 2001; and Defendants' Reply (# 66), filed October 24, 2001.

## BACKGROUND

This case arises out of allegations of sexual harassment and unwanted physical contact in the workplace. Plaintiff Tina Switzer was a fry cook at the Garden Café at Defendant Harrah's, a hotel and casino located in Las Vegas. Individual Defendants Jose Rivera ("Rivera"), Jerry Mayer ("Mayer"), Charles McDaniel ("McDaniel"), Bernard Steel ("Steel"), Juan Valladares ("Valladares"), and Don Bynum ("Bynum") were all employees of Defendant Harrah's working at the Garden Café with Plaintiff.

Plaintiff had worked for Defendant Harrah's for a number of years and in April 1998 was promoted to the position of fry cook at Harrah's Garden Café. Plaintiff alleges that from the start of her employment at the Garden Café, she was the victim of inappropriate sexual acts by her male co-workers. Among the allegations of sexual misconduct made by Plaintiff are that: Defendants Valladares and McDaniel used sausages to simulate male body parts in front of Plaintiff; Defendants Rivera and Valladares pressed themselves against Plaintiff's body and asked if she wanted to make a "Mexican sandwich"; Defendants Rivera, Valladares, and McDaniel hit Plaintiff in the buttocks with their hands and other objects; and Defendant Mayer pinched Plaintiff with hot tongs and made comments regarding Plaintiff's husband. Plaintiff also alleges that she was subjected to a variety of sexually explicit comments by her co-workers, including repeated comments about Plaintiff's breasts and buttocks and references to her feminine cycle. Plaintiff alleges that her immediate supervisor, Brian Kay, was present for one or more of the incidents complained of and that Kay and other supervisors were informed after the fact of incidents and inappropriate comments.

After a female co-worker reported similar harassing conduct to Defendant Harrah's Human Resources Department, Plaintiff also spoke with Human Resources about the alleged sexual harassment she had endured. Defendant Harrah's responded by investigating the complaints of sexual harassment and by meeting individually with each of the alleged offenders. Defendant Harrah's found that Plaintiff's co-workers had comported themselves inappropriately in the workplace and warned the offending employees that they would be immediately terminated for any further unprofessional conduct. Plaintiff acknowledges that the situation greatly improved after the warnings from Defendant Harrah's.

On August 30, 1999, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") against Defendant Harrah's for alleged sexual harassment by her co-workers. Shortly thereafter, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). After investigating, NERC closed its case and the EEOC issued Plaintiff a Right to Sue letter.

Plaintiff thereafter filed a complaint in this Court on June 13, 2000. Against some or all Individual Defendants, Plaintiff has brought claims of intentional and negligent infliction of emotional distress, assault, battery, false imprisonment, and defamation. Against Defendant Harrah's, Plaintiff alleges sexual harassment under Title VII of the Civil Rights Act of 1964 and

Nevada's anti-discrimination statute, retaliation under Title VII, and violation of the Family and Medical Leave Act ("FMLA"). Under a theory of respondeat superior, Plaintiff also charges Defendant Harrah's with responsibility for the torts allegedly committed by the Individual Defendants. Defendant Harrah's and Individual Defendants now petition the Court for summary judgment as to all of Plaintiff's causes of action. Plaintiff also seeks summary judgment as to her FMLA claim. Finally, Defendants seek to strike certain exhibits from Plaintiff's opposition brief.

## DISCUSSION

### I. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "where the record before the court on the motion reveals the absence of any material facts and [where] the moving party is entitled to prevail as a matter of law." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (quoting *Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir.1981)), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Sec. & Exch. Comm'n v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir.1982) (citations omitted).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the responding party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct.

1598, 26 L.Ed.2d 142 (1970). *See also Zoslaw*, 693 F.2d at 883. Once this burden has been met, "[t]he opposing party must then present specific facts demonstrating that there is a factual dispute about a material issue." *Zoslaw*, 693 F.2d at 883 (citation and internal quotes omitted).

### A. Defendant Harrah's Motion

Defendant Harrah's seeks summary judgment as to Plaintiff's sexual harassment, retaliation, and FMLA claims. Defendant Harrah's also seeks summary judgment as to all claims brought against it under a respondeat superior theory for torts allegedly committed by its employees.

### 1. Sexual Harassment Claims

■■■ Defendant Harrah's first contends that Plaintiff's sex discrimination claims under federal and state law are appropriate for summary judgment. Title VII of the Civil Rights Act of 1964 and Nevada's anti-discrimination law prohibit sex discrimination in the workplace. 42 U.S.C. § 2000e–2; N.R.S. 613.330. Although the language of the federal and state statutes refers to discrimination in hiring, termination, and classification of employees, courts have read into the laws a prohibition on sexual harassment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Nichols v. Azteca Rest. Enter.*, 256 F.3d 864, 871 (9th Cir.2001). Sexual harassment claims are generally classified as either "quid pro quo" claims or "hostile work environment" claims.[1] *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir.1991). To prove sexual harassment under a "hos-

---

1. A "quid pro quo" sexual harassment claim arises when an employer or supervisor conditions an employee's promotion on the performance sexual favors. *See Ellison*, 924 F.2d at

875. Plaintiff's sexual harassment claim does not contain allegations of a quid pro quo relation with any of Defendant Harrah's employees.

tile work environment" theory, a plaintiff must show: (1) that he or she was subjected to verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment as to create an abusive working environment. *Id.* at 875–76. Summary judgment is appropriate on a sexual harassment claim only if no reasonable woman would find the defendant's conduct severe or pervasive. *See Canada v. Boyd Group, Inc.,* 809 F.Supp. 771, 776 (D.Nev.1992).

■ Here Plaintiff claims that she endured frequent physical contacts and comments of a sexual nature from fellow employees at Harrah's Garden Café. Specifically, Plaintiff contends that coworkers pressed their bodies against her, simulated male appendages with food products, touched her buttocks with their hands or other objects, and commented on her breasts and buttocks. Plaintiff contends that the physical and verbal acts were unwelcome, as evidenced by her repeated complaints to her supervisor. *See Fielder v. UAL Corp.,* 218 F.3d 973, 985 (9th Cir.2000) ("Employers may be held vicariously liable for failing to remedy sexual harassment by employees when management knew or should have known of the harassing behavior."). Finally, Plaintiff asserts that the physical acts and comments she faced at the Garden Café were severe and pervasive enough to create a hostile workplace. The Court finds that Defendant Harrah's has presented insufficient evidence that no reasonable woman could find that the sexual acts and verbal statements that Plaintiff faced created an abusive work environment.

■ Defendant Harrah's further asserts that summary judgment is appropriate because Defendant Harrah's should not be held liable for the actions of its employees. An employer will be relieved of liability under Title VII if, upon receipt of a complaint of sexual harassment, the employer takes prompt and appropriate actions "reasonably calculated to end the harassment." *Star v. West,* 237 F.3d 1036, 1038 (9th Cir.2001) (quoting *Ellison,* 924 F.2d at 882). However, the employer's liability will not be discharged if the remedy is ineffective in "ending the current harassment and deterring, future harassment—by the same offender or others." *Fuller v. City of Oakland,* 47 F.3d 1522, 1528 (9th Cir.1995).

■ Here Defendant Harrah's contends that it promptly and effectively responded to Plaintiff's sexual harassment complaints. However, it is clear that between April 1998 and August 1999, Plaintiff's supervisors did little to remedy the harassment, though Plaintiff regularly complained of offensive conduct by her coworkers. It was only after Plaintiff filed complaints with the NERC and EEOC that Defendant Harrah's made any legitimate attempt to both end the harassment and deter future inappropriate actions. Yet even after Defendant Harrah's investigated and reprimanded several employees, it appears that some inappropriate conduct continued. Defendant Harrah's can be held liable for the actions of its employees because it has not demonstrated as a matter of law that it took "prompt, effective action" to remedy inappropriate behavior at the Garden Café. *Fuller,* 47 F.3d at 1528.

As Defendant Harrah's has failed to show that no material issues of fact exist as to Plaintiff's sexual harassment claims, its motion for summary judgment will be denied as to these claims.

### 2. Retaliation Claim

■ Defendant Harrah's also seeks summary judgment as to Plaintiff's retaliation claim. Title VII of the Civil Rights

Act of 1964 makes it unlawful to discriminate against an employee who makes a charge under Title VII. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she was engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Little v. Windermere Relocation, Inc.,* 265 F.3d 903, 913 (9th Cir. 2001). Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees." *Fielder,* 218 F.3d at 984 (quoting *Wyatt v. Boston,* 35 F.3d 13, 15–16 (1st Cir.1994)).

■ Plaintiff claims that she was retaliated against by employees and a supervisor following her sexual harassment complaints. Plaintiff asserts that a supervisor told her she would not be promoted, despite having more seniority than her co-workers. Plaintiff also contends that she was denied a change in shift schedule even though a fellow employee had agreed to switch with her. Finally, Plaintiff alleges that co-workers sabotaged her work station and made derogatory comments behind her back.

There is no question that Plaintiff engaged in a protected activity by filing a sexual harassment complaint with federal and state agencies. The actions Plaintiff has alleged could constitute disadvantageous assignments, refusals to promote, and toleration of harassment by employees, all of which are adverse employment actions. While it questionable whether the supervisor's threat regarding promotion

was related to Plaintiff's Title VII claim, there remain genuine issues of fact as to whether Plaintiff was assigned less desirable shifts as a result of her claim. There also remain questions of fact surrounding the actions allegedly taken by co-workers to rearrange Plaintiff's work station after she filed her Title VII complaint.

Defendant Harrah's has failed to adequately demonstrate that there are no genuine issues of material fact, nor that they are entitled to judgment as a matter of law. Summary judgment is therefore inappropriate as to Plaintiff's retaliation claim.

### 3. FMLA Claim

Defendant Harrah's additionally seeks summary judgment as to Plaintiff's FMLA claim. Under the FMLA, an eligible employee[2] may take up to twelve weeks of leave per year to cope with serious health problems or to care for a family member. 29 U.S.C. § 2612(a)(1). An employer may not "interfere with, restrain, or deny" an employee's right to take leave under the FMLA. 29 U.S.C. § 2615(a)(1). In addition, an employer is "prohibited from discriminating against employees who have used FMLA leave." 29 C.F.R. § 825.220(c).

■ Here Plaintiff alleges that she was denied qualified leave under the FMLA on several occasions. During her employment at Defendant Harrah's Garden Café, Plaintiff asked for time off to care for her husband and child who have serious health conditions. *See* Second Amended Complt. ¶ 93. After Defendant Harrah's determined that she qualified for intermittent leave, Plaintiff took days off under the belief that she would not be penalized by her employer. However, an

---

**2.** An employee is "eligible" to take FMLA leave if he or she has been employed for at least twelve months by the employer and for at least 1,250 hours during the year. 29 U.S.C. § 2611(2)(A). As Defendants have not raised the issue, the Court will assume that Plaintiff was "eligible" for leave under the FMLA.

employee relations specialist for Defendant Harrah's did not report the FMLA leave to the payroll department, causing Plaintiff's medical insurance to lapse on three occasions.[3] *See* Depo. of Selene Mendoza, Pl.'s Opp., Ex. 23, pp. 7–9. Plaintiff also alleges that her supervisor told Plaintiff that she would never be promoted because she took too much FMLA leave.

As to Plaintiff's allegation that she was denied leave, it is clear that Defendant Harrah's at least failed to report the FMLA leave hours properly to its payroll department. *See* Depo. of Selene Mendoza, Pl.'s Opp., Ex. 23, pp. 7–9. Although Plaintiff did not work on the days requested, the days were not credited as leave taken under the FMLA. As to Plaintiff's second allegation, that she was discriminated against in promotions, there remain several questions about whether a supervisor at Defendant Harrah's acted to prevent Plaintiff from signing a bid sheet to qualify for a more senior position.

Defendant Harrah's has failed to convince the Court that there are no material issues of fact that remain as to Plaintiff's FMLA claim. Consequently, Defendants Harrah's motion for summary judgment as to Plaintiff's FMLA claim will be denied.

### 4. *Tort Claims*

Plaintiff has also charged Defendant Harrah's with liability for intentional and negligent infliction of emotional distress, assault, battery, false imprisonment, and defamation under a theory of respondeat superior. Defendant Harrah's contends that it cannot be held liable for the tortious acts of its employees and that Plaintiff's claims are preempted by state worker's compensation and anti-discrimination laws.

#### a. Respondeat Superior

"[R]espondeat superior liability attaches only when the employee is under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 96 Nev. 814, 817, 618 P.2d 878, 879 (1980). Under respondeat superior, an employer may be held liable for both negligent and intentional acts of employees. *See, e.g., Busch v. Flangas*, 108 Nev. 821, 824, 837 P.2d 438, 440 (Nev. 1992) (negligence); *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 1225, 925 P.2d 1175, 1180 (Nev.1996) (intentional tort).

Defendant Harrah's claims that it cannot be held liable for the actions of its employees because they were not carried out within the scope of employment. In *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 391, 469 P.2d 399, 400 (1970), a blackjack player sued a hotel under a theory of respondeat superior after one of its dealers punched the player in the face. The Nevada Supreme Court held the employer vicariously liable because the assault occurred within the scope of the task assigned to the dealer. *See id.* at 392, 469 P.2d at 400. Here all of the conduct alleged by Plaintiff occurred in or around the kitchen area of the Garden Café and in the course of the co-workers' duties as cooks. Individual Defendants allegedly flipped grease on Plaintiff, hit her on the buttocks with a bag of french fries, and made lewd gestures with sausage links. Because these and other actions fell within the scope of the tasks assigned to the Garden Café employees, Defendant Harrah's may be held liable for the intentional and negligent torts allegedly committed by them.[4]

---

**3.** Plaintiff's insurance was provided by her union and required a certain number of hours per month of work, including FMLA leave hours, to qualify.

**4.** As described in this Order, summary judgment will be granted as to the defamation claim brought against the Individual Defendants, but denied as to the emotional distress, assault, battery, and false imprisonment

### b. Preemption

■ Defendant Harrah's asserts that all tort claims brought against it are preempted by the Nevada Industrial Insurance Act ("NIIA"), the state's workers compensation law. *See* N.R.S. 616A.005 et seq. Defendant Harrah's further contends that the intentional and negligent infliction of emotional distress claims brought against it are preempted by Nevada's anti-discrimination statute. N.R.S. 613.330 et seq.

Under the NIIA, the exclusive remedy for an employee "injur[ed] by accident sustained arising out of and in the course of the employment" is payment of medical expenses by the employer's worker's compensation insurance. N.R.S. 616A.020. Defendant Harrah's brazenly asserts that none of Plaintiff's alleged physical injuries "occurred other that by 'accident,' as that term has come to be interpreted." *See* Def. Harrah's Motion, at 16. The Court finds it difficult to believe that employees of Defendant Harrah's "accidentally" pinched Plaintiff with hot tongs, "accidentally" pressed their bodies against Plaintiff, or "accidentally" slapped Plaintiff's buttocks several times. Defendant Harrah's asserted defense under the NIIA is not only unsupported by law,[5] but implausible under the factual circumstances of this case.

■ Defendant Harrah's also contends that Nevada's anti-discrimination law preempts Plaintiff's intentional and negligent infliction of emotional distress claims. Defendant Harrah's asserts that because the anti-discrimination law provides a statutory remedy for sexual harassment, all common law claims based on the same conduct are preempted. However, Defendant Harrah's can point to no Nevada case and only one out of state case in support of its preemption defense. *See Greenland v. Fairtron Corp.,* 500 N.W.2d 36 (Iowa 1993). Most courts, including those of Nevada's sister states of California and Arizona, permit both a sexual harassment claim under state anti-discrimination laws and an emotional distress claim under common law. *See, e.g., Cronin v. Sheldon,* 195 Ariz. 531, 991 P.2d 231 (1999) (employment practices act does not preempt common law emotional distress claims); *Rojo v. Kliger,* 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373, 377 (1990) (fair employment law does not preempt common law claims); *see also Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (finding that Congress did not intend for Title VII, upon which most state anti-discrimination laws are based, to preempt state tort law claims).

The Court believes that, if presented with the issue, the Nevada Supreme Court would side with the California and Arizona high courts and find that Nevada's anti-discrimination law also does not preempt common law tort claims. Consequently, this Court finds that Plaintiff's emotional distress claims are not preempted.

### B. Individual Defendants' Motion

In addition to the claims against Defendant Harrah's, Plaintiff has brought a number of state tort law claims against co-workers at the Garden Café. As discussed

---

claims. Consequently, summary judgment will be granted as to the defamation claim brought against Defendant Harrah's and denied as to the remaining tort claims.

**5.** In *King v. Penrod Drilling Co.,* 652 F.Supp. 1331, 1335 (D.Nev.1987), the District Court for the District of Nevada hypothesized that the Nevada Supreme Court would shield employers from common law liability for intentional torts committed by one employee against another. Notwithstanding the dicta in *King,* there is little evidence that the Nevada Supreme Court would adopt such a broad interpretation of the NIIA.

below, the Individual Defendants seek summary judgment as to Plaintiff's claims of intentional and negligent infliction of emotional distress, assault, battery, false imprisonment, and defamation.

### 1. Intentional Infliction of Emotional Distress Claim

 To establish a cause of action for intentional infliction of emotional distress, the plaintiff must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev.2000). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent–A–Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (1998) (quoting California Book of Approved Jury Instructions No. 12.74). Liability for emotional distress generally does not extend to " 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark County Sanitation Dist.*, 752 F.Supp. 956, 962 (D.Nev.1990) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)), *aff'd*, 975 F.2d 588 (9th Cir. 1992). However, "unwelcome sexual advances, sexual remarks, crude innuendos, inappropriate physical touching, and retaliation may reasonably be regarded as extreme and outrageous conduct." *Foster v. Dep't of Motor Vehicles & Pub. Safety*, 1998 U.S.Dist. LEXIS 14744, at *28 (D.Nev.1998).

 The Individual Defendants claim that their actions were not extreme or outrageous. However, courts have found that behavior much like that presented here could rise to the level of extreme and outrageous. *See, e.g., Cox v. Indian Head Indus., Inc.*, 123 F.Supp.2d 892, 896 (W.D.N.C.2000) (male employee placed an object at his groin area and told a female co-worker to dream about his "big one"); *Wahlstrom v. Metro–North Commuter R. Co.*, 89 F.Supp.2d 506, 511 (S.D.N.Y.2000) (male employee "bear hugged" a female co-worker and slapped her on the buttocks several times); *Appel v. Reser's Fine Foods, Inc.*, 939 F.Supp. 789, 791 (D.Or. 1996) (male employee made sexual overtures, lewd remarks, and crude innuendos for more than a year). In each of these cases involving sexually offensive conduct, the court found that summary judgment was not appropriate as to the plaintiff's intentional infliction of emotional distress claim. *See Cox*, 123 F.Supp.2d at 902; *Wahlstrom*, 89 F.Supp.2d at 531; *Appel*, 939 F.Supp. at 793. Here the question of whether the actions of the Individual Defendants constituted "extreme or outrageous" conduct is best left to a jury. *See Posadas v. City of Reno*, 851 P.2d 438, 444, 109 Nev. 448, 456 (1993).

 Individual Defendants also contend that Plaintiff has failed to show she suffered "severe emotional distress." General physical or emotional discomfort is insufficient to demonstrate severe emotional distress. *See Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 482, 851 P.2d 459, 462 (1993). Here Plaintiff allegedly suffers from sleeplessness, irritability, stress and depression. Plaintiff has undergone psychiatric treatment and been diagnosed with adjustment disorder as a result of her allegedly hostile work environment. *See* Depo. of Dr. Daniel Shiode, Pl.'s Opp., Ex. 3, pp. 68–73, 111. Plaintiff has also been prescribed medication for her depression and anxiety. *Id.* at p. 101. Finally, Plaintiff was forced to take off days at work because she suffered severe anxiety attacks. *See* Depo. of Tina Switzer, Pl.'s

Opp., Ex. 1, pp. 162–63. Plaintiff has presented sufficient evidence demonstrating that she suffered more that mere physical or emotional discomfort, and that her emotional distress could be considered "severe."

Individual Defendants have failed to show that there are no material issues of fact regarding Plaintiff's intentional infliction of emotional distress claim. The Individual Defendants' motion for summary judgment must therefore be denied.

### 2. *Negligent Infliction of Emotional Distress Claim*

 A claim of negligent infliction of emotional distress requires the plaintiff to show that the defendant acted negligently (i.e. breached a duty owed to plaintiff) and "either a physical impact ... or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness." *Barmettler v. Reno Air., Inc.,* 114 Nev. 441, 956 P.2d 1382, 1387 (1998).

 Defendant asserts that Plaintiff's claim fails because there is no evidence of physical impact or, alternatively, serious emotional distress. Once again, the Individual Defendants attempt to downplay evidence that several of them physically touched Plaintiff or caused injury to her. There is evidence that Defendants Rivera and Valladares pressed their bodies against Plaintiff and that they or others made forceful physical contact with Plaintiff's buttocks and breast. Even without the obvious physical contact, Plaintiff might alternatively be able show that she suffered severe emotion distress. As described above, Plaintiff underwent psychiatric help, was prescribed anti-depressant medication, and took days off work as a result of her work situation.

Defendants have failed to show that there are no genuine issues of material fact pertaining to Plaintiff's negligent infliction of emotional distress claim. Summary judgment is therefore inappropriate.

### 3. *Assault and Battery Claims*

 To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact. Restatement (Second) of Torts, § 21 (1965). To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur. *Id.* §§ 13, 18.

 Plaintiff has brought assault and battery claims against Defendants Mayer, Rivera, and Valladares. Plaintiff charges that Defendant Mayer pinched her with tongs hard enough to leave bruises. Plaintiff further alleges that Defendant Rivera elbowed her in the breast and that Defendant Valladares touched her buttocks on several occasions. Finally, Plaintiff alleges that Rivera and Valladares pressed their bodies against her, creating a less-than-appetizing "Mexican sandwich."

Defendants contend that any physical contact was unintentional and not intended to cause harm. However, Plaintiff does not frivolously assert that a tort occurred each time one of the Individual Defendants might have understandably brushed past her in the kitchen. Rather, Plaintiff only alleges that a battery occurred where, for example, Individual Defendants "rammed" a french fry bag "up her rear end." *See* Depo. of Tina Switzer, Pl.'s Opp., Ex. 1, p. 74. As to the "Mexican sandwich" incident, the Individual Defendants absurdly contend that they "had every reason to believe Switzer would be amenable to participation." *See* Indiv.Defs.' Motion, at 11.

In *Meadows v. Guptill,* 856 F.Supp. 1362, 1371–72 (D.Ariz.1993), the court found that a male employee had committed battery by pressing his body against a

female co-worker and by touching her buttocks on several occasions. The Individual Defendants' conduct here is no more "accidental" than that in *Meadows* or a number of other similar cases involving sexual harassment. As such, summary judgment is inappropriate as to Plaintiff's assault and battery claims.

### 4. False Imprisonment Claim

Under Nevada law, an individual is liable for the tort of false imprisonment "if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it." *Hernandez v. City of Reno*, 97 Nev. 429, 433, 634 P.2d 668, 671 (Nev.1981) (quoting Restatement (Second) of Torts § 35 (1965)).

Plaintiff contends that she was falsely imprisoned when Defendants Rivera and Valladares pressed their bodies against her in order to form a "Mexican sandwich." Defendants contend that because they only limited Plaintiff's forward and backward movement, there was no complete confinement. However, it is fairly obvious that Plaintiff was confined to a fixed area when Defendants made Plaintiff the "fixings" for their human hoagie. Moreover, the Court finds the Individual Defendants' assertion that Plaintiff "simply chose not to extricate herself from the 'sandwich' " a preposterous explanation for conduct clearly intended to confine Plaintiff, even if temporarily. *See* Indiv.Defs.' Motion, at 14.

Defendants have failed to demonstrate that no genuine issues of material fact exist as to Plaintiff's false imprisonment claim. Defendants motion for summary judgment as to this claim must therefore be denied.

### 5. Defamation Claim

To establish a prima facie case of defamation, a plaintiff must prove (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Chowdhry*, 109 Nev. at 483, 851 P.2d at 462 (1993) (citing Restatement (Second) of Torts, § 558 (1977)). If the defamation tends to injure the plaintiff in his or her business or profession, it is deemed defamation *per se*, and damages will be presumed. *See Nevada Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 409, 664 P.2d 337, 341 (1983).

Plaintiff claims that Defendants Steel and Valladares made defamatory statements to other employees to the effect that Plaintiff was having a homosexual relationship with a female co-worker. Plaintiff admits that she cannot prove her defamation claim at this point, but asserts that she will be able to do so at trial. However, Plaintiff "cannot prove at trial what [s]he is required to show at summary judgment." *DiJoseph v. City of Philadelphia*, 953 F.Supp. 602, 616 (E.D.Pa.1997). Plaintiff provides only speculation that she will be able to elicit testimony supporting her defamation claim. Without any supporting testimony in the form of depositions or affidavits, Plaintiff's defamation claim must fail.

### C. Plaintiff's Countermotion

Plaintiff seeks summary judgment only as to her FMLA. As described *supra*, the Court has denied Defendant Harrah's motion for summary judgment as to the FMLA claim because there are material issues of fact that remain. The Court will similarly deny Plaintiff's countermotion because there are question of fact surround-

ing the FMLA claim that can only be resolved at trial.

## II. Motion to Strike

■ Defendants seek to strike certain exhibits attached to Plaintiff's opposition memoranda. Defendants claim that a number of depositions and other discovery materials must be stricken because Plaintiff failed to cite every page that was attached and because the statements made in the affidavits are unreliable or contain inadmissible hearsay. While Defendants are correct that Rule 56 requires that a party opposing summary judgment provide "specific facts," the Court finds no reference to "specific citations" in the rule. Regardless, when the moving party fails to show that there are no material issues of fact, as Defendants have here, the opposing party is not even required to respond. *See Mirage Resorts, Inc. v. Stirpe*, 152 F.Supp.2d 1208, 1214–15 (D.Nev.2000) (denying summary judgment even though no opposition memorandum was filed). As for Defendants complaints about hearsay, the Court is fairly confident in its ability to discern fact from fiction. If Defendants feel that the affiants' testimony is unreliable or contains hearsay, they are free to make such objections at trial. As Defendants have provided no legitimate grounds to strike Plaintiff's exhibits, the motion will be denied.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant Harrah's Las Vegas Inc.'s **Motion for Summary Judgment** (# 52) is GRANTED as to the defamation claim and DENIED as to all remaining claims.

IT IS FURTHER ORDERED that Defendants' **Motion for Summary Judgment as to Jose Rivera, Jerry Mayer, Charles McDaniel, Bernard Steel, Juan Valladares, and Don Bynum** (# 53) is GRANTED as to the defamation claim and DENIED as to all remaining claims.

IT IS FURTHER ORDERED that Plaintiff's **Countermotion for Summary Judgment** (# 58) is DENIED.

IT IS FURTHER ORDERED that Defendant Harrah's **Motion to Strike** (# 60) is DENIED.