Patricia Neale WATSON, Plaintiff,

v.

**LAS VEGAS VALLEY WATER DISTRICT, Defendant.**

No. CVS001338PMPRJJ.

United States District Court,
D. Nevada.

May 27, 2005.

Watson, Patricia Neale, Las Vegas, NV, pro se.

Nancy D. Savage—000392, Earley & Savage, Gregory E. Smith—001590, Smith & Kotchka, Las Vegas, for Las Vegas Valley Water District, Defendant.

## ORDER

PRO, Chief Judge.

Presently before this Court is Defendant Las Vegas Valley Water District's ("LVVWD") Motion for Summary Judgment (Doc. # 41), filed on January 7, 2005. Plaintiff Patricia Neale Watson ("Watson") filed Plaintiff Patricia Neale Watson's Opposition to Defendant Las Vegas Valley Water District's Motion for Summary Judgment (Doc. # 49) on February 11, 2005. LVVWD filed Defendant Las Vegas Valley Water District's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. # 53) on March 7, 2005.

## I. BACKGROUND

The following account presents the facts viewed in a light most favorable to Plaintiff, and recounts events from 1998–2002. LVVWD is a public employer doing business in Clark County, Nevada. (Am. Compl.¶ 3.) Watson was employed by LVVWD from 1989 through December 1, 2003. (Mot. for Summ. J., Ex. A (Watson Dep.) at 10:13–25.) During the relevant time period, Watson held the position of Chemist II. (Id. at 12:4.) Watson worked at a satellite facility for LVVWD located at Lake Mead. (Id. at 13:9–12.)

On December 4, 1998, Watson conducted a training class for approximately nineteen (19) co-workers, including Dan Nguyen ("Nguyen"), a lab technician. (Def. Mot. For Summ. J., Ex. L at 19–20.) During the class, Watson instructed Nguyen to perform a pH meter task for the class. (Id.) Nguyen incorrectly performed the procedure, and Watson asked him to redo the procedure. (Id. at 20.) Nguyen allegedly responded by asking if Watson would perform a sexual act with him saying, "Okay honey, do you want me to do a '69' on you. I'll do that with you too." (Id.) According to Watson, the class erupted with laughter. (Id.) Watson asked Nguyen to stop speaking to her in that manner, and repeat the pH analysis. (Id.) According to Watson, Nguyen continued to engage in harassing conduct for approximately twenty minutes, saying to her: "Okay honey, you eat me and I eat you. That's how it's done, isn't it honey," and describing in detail how he likes to be orally pleasured and giving sexual instructions. (Id.) Watson allegedly terminated the presentation due to Nguyen's conduct. (Id.)

Watson complained to her supervisor, John Fronk ("Fronk"), about the incidents that occurred on December 4, 1998. (Id.) Watson also initiated a complaint with Patricia Maxwell ("Maxwell"), Director of Human Resources. (Id.) Maxwell conducted an investigation, and Nguyen admitted to making the statements. (Def. Mot. For Summ. J., Ex. G.) As a result, David Rexing ("Rexing"), another supervisor, administered a one (1) day suspension without pay that Nguyen served on December 23, 1998. (Id.)

On March 18, 1999, Rexing approached Watson while Watson was working in the inorganic lab. (Def. Mot. For Summ. I., Ex. L at 19–20.) According to Watson, Rexing placed both hands on her shoulders and whispered in her ear. (Id.) Watson filed a complaint against Rexing, complaining of inappropriate touching. (Id.) LVVWD did not conduct an investigation into this incident, and the only result of the complaint was an e-mail apology from Rexing to Watson. (Def. Mot. for Summ. J., Ex. J.)

On May 14, 1999, Fronk approached Watson from behind and whispered in her ear that two employees of the Southern Nevada Water Service were lovers. (Pl. Opp'n to Def. LVVWd's Mot. for Summ. J., Ex. 6, at 2.) Watson told Fronk she did not appreciate him crowding her space and whispering in her ear. (*Id.*) Watson reported the incident to Rexing and Maxwell. (Pl. Opp. To Def. LVVWD's Mot. for Summ. J., Ex. 19.) Maxwell conducted an investigation concerning this incident, and Fronk denied the gossip allegation. (Pl. Opp. To Def. LVVWD's Mot. for Summ. J., Ex. 21.) Maxwell concluded in her report that she did not believe that Fronk and Watson exchanged gossip considering the fact that there was a pending lawsuit at the time. (*Id.*) Maxwell also concluded that Fronk's conduct in the lab was not sexual harassment. (*Id.*)

Watson alleges that due to LVVWD's inadequate remedial measures to end the harassment, the lab fostered an environment that allowed Watson's supervisors and co-workers to harass and retaliate against Watson in several incidents during the March 2000 to September 2001 time frame. The incidents included Watson's lab instruments being sabotaged, Watson's water sample reports submitted to Fronk which were not duly forwarded to their intended destinations, Watson's co-workers reporting incorrect data to Watson who was held accountable for the accuracy of testing results, and Fronk reducing Watson's workload and reassigning her responsibilities.

Watson filed a Complaint with this Court on November 6, 2000. Watson filed a second Complaint (formerly CV–S–02–0126–KJD (LRL)) on January 28, 2002. This Court consolidated the cases under case number CV–S–00–1338–PMP(RJJ) on January 11, 2005. (Doc. # 40.) In the Complaint, Watson asserted claims of sexual harassment, racial harassment, retalia-tion, intentional infliction of emotional distress. LVVWD moves this Court to grant summary judgment in their favor on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## III. DISCUSSION

### A. Res Judicata

LVVWD contends Watson's claims are barred under the doctrine of res judicata. LVVWD argues that while Watson litigated a similar set of claims in 1998, she made additional complaints that ultimately became the two consolidated lawsuits presently before the Court. According to LVVWD, the pending claims should be barred because they could have been brought during the original litigation.

Watson argues that the facts surrounding the current litigation are separate and distinct from the claims that comprised the 1998 litigation.

■ Res judicata bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir.2001). Res judicata is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.* The inquiry regarding the identity of claims centers on the question of whether the two suits arise out of the same transactional nucleus of facts. *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir.2000).

In *Owens,* the plaintiffs sued the defendants for wrongful termination in state court. *Owens,* 244 F.3d at 711. The defendants removed the case to federal court and moved for dismissal. *Id.* After receiving no opposition, the trial court dismissed the action with prejudice. *Id.* The plaintiffs filed an amended complaint, and the defendants moved to dismiss the claims based on res judicata. *Id.* The trial court granted the defendant's motion to dismiss. *Id.* The Ninth Circuit affirmed the trial court's dismissal because although the plaintiffs plead additional causes of action were available, all claims stemmed from the same nucleus of operative facts that was previously dismissed with prejudice by the trial court. *Id.* at 714.

■ Res judicata does not bar litigation of the present claims. Watson's 1998 Complaint stemmed from conduct that occurred from 1995 to April 1998. The current litigation addresses conduct that allegedly commenced in December of 1998. Although the present claims involved similar legal issues, these claims arose after the original action commenced. Unlike the situation in *Owens,* the evidence necessary to sustain Watson's current case is separate and distinct from the evidence relied upon to sustain her original case. It may have been convenient to consolidate some of the claims in a manner similar to how her current claims are consolidated. Nevertheless Watson's is not required to do so because her current action originates from is nucleus of facts different than the original action.

## B. Statute of Limitations

LVVWD argues that any claims based on events that occurred prior to May 15, 1998 are barred by the statute of limitations. According to LVVWD, Watson contacted the Nevada Equal Rights Commission ("NERC") on March 23, 1999, and Watson's Title VII claims have a 300 day statute of limitations. LVVWD further argues that the incidents are not a part of any continuing violation, so any claims arising from conduct that occurred prior to May 15, 1998 should be disallowed. Watson argues that any claims based on conduct prior to May 15, 1998 are not barred because they are part of a continuation of a hostile work environment.

■ A plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") as a prerequisite to maintaining any Americans with Disabilities Act ("ADA") or Title VII claim. *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1176 (9th Cir. 2000). A complainant must file a charge with the EEOC within 180 days of the last act of alleged discrimination, unless the complainant initially institutes proceedings with a state or local agency, in which case the EEOC charge must be filed within 300 days. 42 U.S.C. § 2000e–5(e). A discrete discriminatory act occurs on the date it happened. *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Dis-

criminatory acts that fall within the statutory period do not make timely acts that fall outside of the statutory period. *Id.* However, under the continuing violation doctrine in this Circuit, if a discriminatory act takes place within the limitations period and that act is "related and similar to" acts that took place outside the limitations period, all the related acts-including the earlier acts-are actionable as part of a continuing violation. *O'Loghlin v. County of Orange,* 229 F.3d 871, 875 (9th Cir. 2000). Hostile environment claims rest on a culmination of incidents which generally do not in and of themselves represent violations of Title VII. As long as even a small part of the hostile environment claim continues into the limitations period, a plaintiff may claim a continuing violation. *See Draper v. Coeur Rochester,* 147 F.3d 1104, 1107 (9th Cir.1998). Several Circuits have indicated that "a hostile environment claim usually involves a continuing violation." *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 476 (5th Cir.1989); *Purrington v. Univ. of Utah,* 996 F.2d 1025, 1028 (10th Cir.1993); *Saxton v. Am. Tel. and Tel. Co.,* 10 F.3d 526, 532 (7th Cir.1993); *see also West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3rd Cir.1995).

 Watson's claims for alleged discriminatory acts occurring prior to May 15, 1998 are barred by the statute of limitations. In response to LVVWD's interrogatory requesting information on every incident that Watson alleges to constitute her claims of racial or sexual discrimination, Watson recounts several incidents from February 1998 to April 1998. For example, Watson alleged in a response to an interrogatory that on March 19, 1998, Monica Spencer, a co-worker, completed her last day of work with LVVWD, and the chemistry department had a luncheon in her honor. Fronk was expected to bring something for the luncheon, but failed to do so, saying that he forgot. Watson's response to the interrogatory

fails to clarify how Watson was treated differently than persons of another race or gender. Because Watson fails to specify how these incidents violated Title VII, they may not be used to support her claim of a continuing violation. Watson therefore may not rely upon her factual allegations occurring prior to May 15, 1998 to establish her claims in this action.

## C. Hostile Work Environment Claims

LVVWD contends the Court should grant summary judgment regarding Watson's hostile work environment claims because Watson's evidence fails to create a triable issue of fact regarding whether LVVWD's conduct was severe or pervasive. According to LVVWD, Watson's claims also fail as a matter of law because LVVWD conducted investigations and took proper action to address all of Watson's complaints of harassment. In response, Watson argues that she has presented sufficient evidence of severe and pervasive conduct of a sexual or racial nature, and that LVVWD failed to adequately investigate and address Watson's complaints.

 A claim of unlawful hostile work environment requires a showing that the plaintiff was: (1) subjected to verbal or physical conduct of a harassing nature; (2) that the conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1110 (9th Cir. 2000). A plaintiff must show that the harassment took place because of a protected characteristic, such as sex or religion. *Id.* at 1109. To be actionable under Title VII, a hostile environment must be objectively and subjectively offensive; one that a reasonable victim would find to be offensive, and one that the victim at issue

does find offensive. *Id.* at 1110. An analysis of whether the conduct is sufficiently severe or pervasive requires "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening and humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The Ninth Circuit addressed what manner of conduct rises to "severe or pervasive" under the factors outlined by the Supreme Court in *Harris. See, e.g., Kortan,* 217 F.3d at 1110; *Nichols v. Azteca Restaurant Enters., Inc.,* 256 F.3d 864, 872 (9th Cir.2001). For example, in *Kortan,* the Ninth Circuit held that the plaintiff failed to raise a genuine issue of fact regarding severe or pervasive conduct based on evidence that the defendant used, on a single occasion, gender derogatory language in her presence, including referring to various staff members as a "castrating bitch," a "Madonna" and a "regina." *Kortan,* 217 F.3d at 1111. By contrast, in *Nichols,* the Ninth Circuit held that a reasonable man could have found his work environment to be sufficiently severe and pervasive to alter the conditions of his employment when the plaintiff's coworkers habitually called him sexually derogatory names, referred to him with the female gender, and taunted him for behaving like a woman. *Nichols,* 256 F.3d at 872–73.

■ Watson fails to establish that the LVVWD has engaged in offensive conduct that is so severe as to alter her working conditions. Here, Watson endured offensive conduct of a sexual nature by a coworker in the form of sustained explicit dialogue over a period of twenty minutes. While Watson attempted to conduct a class for her coworkers, Nguyen repeatedly solicited sexual favors from Watson in the presence of a class of twenty employees. Nguyen described in graphic detail what sexual acts he desired from Watson. While highly offensive, Nguyen's conduct falls well short of conduct that the Ninth Circuit has held to be insufficient to meet the severity requirement as a matter of law.

Watson also fails to establish that LVVWD has engaged in conduct that satisfies the pervasive requirement for a Title VII claim. In response to LVVWD's motion for summary judgment, Watson presented evidence of: (1) the March 19, 1999 incident in which Rexing approached Watson and placed both of his hands on Watson's shoulders while he whispered to her; and (2) the May 14, 1999 incident in which Fronk approached Watson from behind and whispered that two employees at the site were lovers. Taking Watson's evidence as true, these combined incidents do not rise to the level of conduct that alters Watson's working conditions. The classroom incident was an isolated incident. Nguyen had no prior incidents of this nature, and has not been accused of inappropriate conduct since.

The Rexing and Fronk incidents do not individually or collectively constitute conduct that can be considered objectively offensive. While both incidents involved physical contact, neither incident involved contact with Watson's intimate areas. Watson immediately informed Rexing and Fronk of her discomfort, and both men apologized for any misunderstanding and ceased standing in close proximity to Watson. Watson presents no evidence to suggest that assuming the incidents were objectively offensive, that Rexing and Fronk engaged in this conduct because of Watson's gender. Because Watson fails to present sufficient evidence of severe or pervasive conduct, Watson's claims of a sexually hostile work environment must

fail. The Court therefore will grant LVVWD's motion for summary judgment on Watson's claims for hostile work environment.

### D. Retaliation

LVVWD argues that Watson's claims of retaliation fail because Watson has not presented evidence of an adverse employment action. LVVWD also argues that no causal link exists between Watson's protected activity and any adverse employment action. Watson argues that although she was not terminated, she has suffered adverse employment actions that violate retaliation laws.

■■■■■ To establish a claim for retaliation, a plaintiff must establish that: (1) she engaged in a protected activity; (2) she suffered an adverse employment decision; and (3) there was a causal link between a plaintiff's activity and the employment decision. *Lyons v. England,* 307 F.3d 1092, 1118 (9th Cir.2002). An adverse employment action is one that is reasonably likely to deter an employee from engaging in protected activity. *Ray v. Henderson,* 217 F.3d 1234, 1242–43 (9th Cir.2000). The Ninth Circuit defines adverse employment actions in a broad manner. *Id.* at 1240. For example, lateral transfers and schedule changes may constitute adverse employment actions, while mere offensive comments by coworkers do not constitute an adverse employment action. *Id.* at 1243. Further, harassment by coworkers may form the basis of a retaliation claim. *Id.* at 1245.

■■■■ When adverse employment actions are taken within a reasonable amount of time after complaints of discrimination have been made, retaliatory intent may be inferred. *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 507 (9th Cir.2000). However, to invoke temporal proximity as a sole basis for asserting retaliation, the timing between the protected activity and the adverse employment action must be very close, such as in several days, not several months. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *see also Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after protected activity); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731–32 (9th Cir.1986) (holding that sufficient evidence of causation existed where adverse employment action occurred less than two months after protected activity).

■■■■ The parties do not dispute that Watson engaged in protected activity by complaining about the alleged hostile work environment, regardless of whether or not the claims were meritorious. Watson presents the following evidence to establish that she suffered adverse employment actions: (1) Watson's lab instruments being sabotaged preventing Watson from performing her duties; (2) Watson's water sample reports submitted to Fronk which were not forwarded to the required departments; (3) Watson's coworkers in the lab reporting unreliable data to Watson, affecting her ability to prepare accurate reports; (4) Fronk reduced Watson's workload and reassigned Watson's responsibilities; and (5) an unidentified individual entering Watson's office and placing contaminated instruments and chemicals around Watson's food. These actions are reasonably likely to deter employees from engaging in protected activity. *See, e.g., Ray,* 217 F.3d at 1243–44 (holding that reduction in workload is an adverse employment action). Watson therefore has presented sufficient evidence that she suffered adverse employment actions.

Watson presented evidence that she engaged in protected activities on several occasions. On December 7, 1998, Watson filed a complaint to supervisors regarding sexual harassment. On March 23, 1999, she filed a NERC complaint. On May 14 1999, Waston sent an e-mail complaining of the incident with Fronk. On June 22, 2000, she mailed a letter to NERC requesting reconsideration of their decision as well as a request to consider new allegations. In November of 2000, Watson filed a Complaint in federal court. In April of 2001, Watson filed an additional NERC Complaint.

The events that Watson relies upon to establish her retaliation claims also occurs on several dates, including May 4, 2000 (allegations of tampering with equipment), June 21, 2000 (Watson not selected for involvement in the summer intern program), August 8, 2000 (reduction of Watson's workload),[1] and December 19, 2000 (Watson received employee warning notice regarding unreliable data although she claims it was the responsibility of coworkers who failed to meet performance standards).

▮ Watson has presented sufficient evidence to create a triable issue of fact regarding retaliation. Specifically, Watson presented evidence that her employers reduced her workload and level of responsibility in August of 2000. This incident occurred less than two months after Watson engaged in protected activity by reporting additional incidents to NERC in June of 2001 in hopes of reviving her prior claim. The temporal proximity between these two events sufficiently creates an inference that Watson suffered an adverse employment action because she engaged in protected activity to preclude summary

judgment. The Court therefore will deny summary judgment on Watson's retaliation claims.

## E. Intentional Infliction of Emotional Distress

LVVWD contends it is entitled to summary judgment on Watson's claim for intentional infliction of emotional distress because Watson has not presented evidence of extreme or outrageous conduct or severe emotional distress. Watson responds that the frequency and severity of the alleged retaliation-based conduct was beyond all bounds of decency, and therefore creates an issue of fact regarding intentional infliction of emotional distress. Watson offers no response to LVVWD's argument regarding evidence of severe emotional distress.

▮ To establish a cause of action for intentional infliction of emotional distress, a plaintiff must establish the following under Nevada law: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Olivero v. Lowe,* 116 Nev. 395, 995 P.2d 1023, 1025 (2000). "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A– Car,* 114 Nev. 1, 953 P.2d 24, 26 (1998). "Liability for emotional distress generally does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Burns v. Mayer,* 175 F.Supp.2d 1259, 1268 (D.Nev. 2001). "However, unwelcome sexual ad-

---

**1.** The Court notes that Watson relies also on deposition testimony to reveal additional retaliatory incidents. However, the deposition testimony does not indicate when the incidents occurred. For the purposes of discussion of temporal proximity, the Court will rely only on the incidents for which the record reflects a date.

vances, sexual remarks, crude innuendos, inappropriate physical touching, and retaliation may reasonably be regarded as extreme and outrageous conduct." *Id.* Intentional infliction of emotional distress is recognizable in the employment discrimination context. *Shoen v. Amerco, Inc.,* 111 Nev. 735, 896 P.2d 469, 476 (1995).

 To establish severe emotional distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.,* 819 F.Supp. 905, 911 (D.Nev. 1993). General physical or emotional discomfort is insufficient to demonstrate severe emotional distress. *Burns,* 175 F.Supp.2d at 1268 (citing *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459, 462 (1993)). A plaintiff may fail to establish severe emotional distress if she fails to seek medical or psychiatric assistance. *Miller v. Jones,* 114 Nev. 1291, 970 P.2d 571, 577 (1998). In *Burns,* the district court held that a jury could find severe emotional distress based on the plaintiff's evidence of suffering headaches, stomach aches, stress, and depression. *Burns,* 175 F.Supp.2d at 1268–69. The plaintiff underwent psychiatric treatment and was diagnosed with adjustment disorder. *Id.* The plaintiff was prescribed medication for her depression and anxiety. *Id.* at 1269. The district court held that this evidence was collectively sufficient to defeat summary judgment. *Id.*

 Here, Watson failed to present sufficient evidence to establish severe emotional distress due to LVVWD's conduct. Watson presents no evidence of medical or psychiatric assistance arising from the alleged incidents. Watson states in an answer to an interrogatory that she has sought counseling from Dr. Ron Zedek. Although Watson mentions Dr. Zedek, she fails to present to the Court any record of visitation or report by Dr. Zedek. The Court cannot speculate as to the nature and extent of Watson's emotional distress as well as determine any issues of causation. Watson's evidence as to her degraded emotional state fails to rise above general emotional or physical discomfort, which is unactionable. As a matter of law, Watson has not established a genuine issue of material fact that she suffered severe emotional distress. The Court will grant summary judgment on Watson's intentional infliction of emotional distress claims.

## F. Race Discrimination Claims

LVVWD contends the Court should grant summary judgment on behalf of LVVWD for Watson's racial discrimination claim. According to LVVWD, Watson has failed to produce any evidence of conduct on the basis of race. Watson does not respond to this argument. The record is devoid of evidence of discriminatory conduct on the basis of race. The Court therefore will grant summary judgment on behalf of LVVWD on Watson's racial discrimination claim.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Las Vegas Valley Water District's Motion for Summary Judgment (Doc. # 41) is hereby GRANTED to the extent that Plaintiff Watson's claims for hostile work environment, intentional infliction of emotional distress, and racial discrimination are hereby dismissed.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. # 41) is DENIED in all other respects.